IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH J. L., JR.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-CV-621-MAB |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on Plaintiff's Motion for Award of Attorney's Fees Pursuant to the Equal Access to Justice Act in the amount of in the amount of $7,689.41 (Doc. 35; Doc. 40, p. 8; Doc. 40-2). The Commissioner filed a response in opposition, arguing that his position was substantially justified and therefore Plaintiff is not entitled to fees (Doc. 37). Plaintiff filed a reply (Doc. 40)

The EAJA provides that a court must award fees and costs "to a prevailing party in a suit against the United States unless the government's position was substantially justified or special circumstances make the award unjust." *Stewart v. Astrue*, 561 F.3d 679, 682 (7th Cir. 2009) (citing 28 U.S.C. § 2412(d)(1)(A)). Here, the Commissioner's only

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

argument is that fees should not be awarded to Plaintiff because the government's position was substantially justified.

The Commissioner has the burden of establishing that the government's position was substantially justified. *Stewart*, 561 F.3d at 683. The EAJA does not define the term "substantially justified," and the Seventh Circuit has recognized that its meaning in this context is not "self-evident." *U.S. v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 381 (7th Cir. 2010). It obviously means something more than the Commissioner's position was merely "not frivolous." *Id.* On the other hand, it does not mean that the Commissioner's position had to be correct. *Id.* "Between frivolous and meritorious lie cases that are "'justified in substance or in the main,'" meaning justified to a degree that "a reasonable person could conclude that the ALJ's opinion and the commissioner's defense of the opinion had a rational basis in fact and law." *Id.* (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)); *Bassett v. Astrue*, 641 F.3d 857, 859 (7th Cir. 2011) (citing *Marcus v. Shalala,* 17 F.3d 1033, 1036 (7th Cir. 1994)).

In determining whether the government's position was substantially justified, the court must look at the government's overall conduct throughout the entire proceeding, including the prelitigation conduct before the agency and the litigation conduct before the court. *United States v. Hallmark Const. Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000) (citing *Marcus*, 17 F.3d at 1036); *Cummings v. Sullivan*, 950 F.2d 492, 500 (7th Cir. 1991). However, the court "is to make only one determination for the entire civil action." *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006) (citing *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004)); *Marcus,* 17 F.3d at 1036; *Cummings*, 950 F.2d at 500. *See also Hallmark,*

200 F.3d at 1081 ("[T]he trial court does not make separate determinations" regarding the government's conduct during the prelitigation and litigation stages but rather "arrive[s] at one conclusion that simultaneously encompasses and accommodates the entire civil action." (quoting *Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir. 1996))). "EAJA fees may be awarded if the government's pre-litigation conduct, including the ALJ decision itself, or its litigation position are not substantially justified . . . ." *Conrad*, 434 F.3d at 990 (quoting *Golembiewski*, 382 F.3d at 724). *Accord Gatimi v. Holder*, 606 F.3d 344, 347 (7th Cir. 2010) ("[F]ees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa." (quoting *Marcus,* 17 F.3d at 1036))).

Plaintiff's case has come before the Court twice. Plaintiff's initial application for benefits was denied in 2017 when the ALJ determined that Plaintiff was capable of performing sedentary work. SDIL Case No. 18-CV-2078-DGW, Doc. 28. In reaching this decision, the ALJ afforded "little weight" to the state agency medical consultant's 2015 opinion (which found that Plaintiff could perform light work) because it pre-dated an MRI Plaintiff had done in 2017 by almost two years. *Id.* The ALJ then concluded on his own that although the 2017 MRI showed Plaintiff's condition had worsened and he "would have a more restrictive functional capacity," he could still perform sedentary work. *Id.* Plaintiff sought judicial review of the ALJ's decision, which the Court reversed and remanded, finding that the ALJ erred by independently interpreting the significance of Plaintiff's 2017 MRI results without the input of a medical expert. *Id.* The Court stated, in pertinent part that there were "obvious differences between the 2014 and 2017 MRIs"

and "[i]t was error for the ALJ to determine for himself that the 2017 MRI shows that plaintiff is capable of sedentary work." *Id.* at pp. 11, 13 (citing *Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) ("But, without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with his assessment.")).

On remand, the same ALJ held another hearing and denied Plaintiff's application for benefits a second time (*see* Doc. 33). Curiously, this time around, the ALJ gave the state agency medical consultant's 2015 opinion "significant weight" and determined that Plaintiff could perform light work (*see id.*). Plaintiff once again sought judicial review of the ALJ's decision (*see id.*). Plaintiff raised two overlapping arguments, which the Court addressed together: whether the ALJ improperly interpreted Plaintiff's 2017 MRI records using his own lay opinion and whether the ALJ improperly relied on the opinion of a state agency consultant because the opinion pre-dated the MRI records in question (*see id.*). The Court once again reversed and remanded the ALJ's decision, explaining:

> The circumstances of this case present a close call. On one hand, Plaintiff's treatment providers offered him the same conservative treatment for his back pain before and after the 2017 MRI. . . . On the other hand, the 2017 MRI unequivocally states Plaintiff's condition worsened following [the state agency consultant's] opinion. However, the ALJ determined the 2017 MRI did not affect the credibility of [the state agency consultant's] 2015 opinion because the MRI showed "only mild progression of degenerative change." . . . [A]dmittedly, "mild progression" sounds unremarkable to the lay ear. However, neither the Court nor the ALJ is qualified to interpret the medical significance of the phrase. . . . Although the ALJ thoroughly summarized the medical evidence and offered detailed explanations of his reasoning, there is no medical opinion in the record that sheds light on the significance of the 2017 MRI. Given the five-year gap between [the state agency consultant's] opinion and the ALJ's decision, and the unknown but

>   potential significance of the 2017 MRI, the ALJ erred in drawing conclusions
>   from the technical medical evidence without relying on a medical expert.

(Doc. 33, pp. 20–21). In other words, the Court determined that the ALJ had once again impermissibly relied on his own interpretation of the medical evidence.

In arguing that the government's position was substantially justified, the Commissioner hangs his hat on the Court's statement that "[t]he circumstances of this case present a close call" (*see* Doc. 37, pp. 3–5; *see also* Doc. 33, p. 20). The Court regrets that its word choice gave the Commissioner reason to believe there was grounds for arguing the government's position was substantially justified. The ALJ's first decision was reversed because he impermissibly "played doctor" by not seeking an updated medical opinion regarding Plaintiff's functional abilities in light of the 2017 MRI. The ALJ's second decision was reversed for the same exact reason. The ALJ's failure to correct his mistake on remand establishes a lack of substantial justification in the ALJ's decision and thus in the Commissioner's defense of that position. *See Watkins v. Harris*, 566 F. Supp. 493, 498 (E.D. Pa. 1983) (holding government's position was not substantially justified where the ALJ committed the same error twice—"This case is precisely one to which Congress intended the EAJA to apply. The government's failure to correct its original errors on remand necessitated a second appeal[.]"); *see also Bassett v. Astrue*, 641 F.3d 857, 860 (7th Cir. 2011) ("[I]t typically takes something more egregious than just a run-of-the-mill error in articulation to make the commissioner's position unjustified—something like . . . the commissioner's defending the ALJ's opinion on a forbidden basis.").

The Court thus finds that Plaintiff is entitled to an award of attorney's fees under

the EAJA in the total amount of $7,689.41. Plaintiff initially asked for an award of attorney's fees in the amount of $5,705.39, for 26.83 hours of work at the rate of $212.65 per hour (Doc. 35). Plaintiff then asked for an additional $1,984.02 for the 9.333 hours his attorney spent drafting his reply to the Government's opposition to his fee request (Doc. 40, p. 8; Doc. 40-1). *See Tchemkou v. Mukasy*, 517 F.3d 506, 511 (7th Cir. 2008) (approving fees for time spent preparing reply brief). The Commissioner did not contest the number of hours or hourly rate sought by Plaintiff (*see* Doc. 37). The Court finds that the amount sought is reasonable and appropriate.

Plaintiff's Motion for Award of Attorney's Fees Pursuant to the Equal Access to Justice Act (Doc. 35) is **GRANTED**. The Court awards Plaintiff attorney's fees in the amount of $7,689.41 (seven thousand six hundred eighty-nine dollars and forty-one cents). The fee award belongs to Plaintiff and not Plaintiff's attorney and can be offset to satisfy any pre-existing debt that Plaintiff owes the United States. *Astrue v. Ratliff*, 560 U.S. 586 (2010); *Harrington v. Berryhill*, 906 F.3d 561 (7th Cir. 2018). If the Commissioner can verify that Plaintiff does not owe a pre-existing debt to the government subject to the offset, the Commissioner shall direct that the award be made payable to Plaintiff's attorney pursuant to the EAJA assignment duly signed by Plaintiff.

**IT IS SO ORDERED.**

DATED: May 11, 2023

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**